# State *ex rel.* Harmon *v.* Hamil, *et al.*

*Application for Mandamus.*

1. *Mandamus does not lie when there is adequate remedy.*—There being a mode of contesting an election provided by statute, mandamus will not lie to compel a board of supervisors to re-canvass the votes cast at an election, on the ground of alleged errors in counting votes.

2. *Same—office of writ.*—The office of a writ of mandamus is to compel an inferior tribunal to take action, not to direct what action shall be taken in a matter involving the exercise of discretion.

[State ex rel. Harmon v. Hamil et al.]

APPEAL from Pike Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

R. L. Harmon addressed his petition to the Judge of the Circuit Court alleging that he was voted for, and elected as a member of the General Assembly for Pike county at the August election, 1892, but that the board of supervisors of the county certified the election of a different person to the office, which result was reached by counting the returns in three boxes which were not secured and sealed as the law directs, and that if said returns had been rejected, petitioner would have been elected, and praying for a writ of mandamus commanding the supervisors to canvass the returns and reject those from the boxes alleged to be improperly sealed and secured.

The respondents demurred to the petition on the grounds: first, that said petition shows no just or legal cause why the writ of mandamus should issue; second, because it was the duty of said board of supervisors to include in their statements and certificates to the same, as required by law, the votes returned from each of the said boxes complained of; third, because said boxes being locked as alleged, it was a substantial compliance with the statutes.

The court sustained the demurrers and the petitioner refusing to amend, the petition was dismissed.

M. N. CARLISLE, and R. L. HARMON, and TOMPKINS & TROY, for appellants, cited High §§ 55, 56 A., 61; *O'Ferrell v. Colby*, 2 Minn. 180; *Bisbee v. Board*, 17 Fla. 29; Moses on Mandamus 90; *State v. Randolph*, 35 Ohio, 64; *Platt v. Goode*, 4 Cong. El. Cases, 650; *Abbott v. Frost, Ib.* 602.

No counsel appeared for appellees.

STONE, C. J.—Conceding for the sake of the argument that relator has been aggrieved, is *mandamus* the appropriate remedy for redressing that grievance? Let us inquire to what extent our own decisions complicate us. What is the nature of the duties of inspectors of elections under our system? Are they, or not, purely ministerial; and if so, is there no other adequate remedy for the redress of the grievance complained of? If there is, then *mandamus* can not be resorted to. *Leigh v. State, ex rel,* 69 Ala. 261, and authorities cited; High Ex. Legal Remedies, § 49.

In *Hudmon v. Slaughter*, 70 Ala. 546, the question arose on the duty of the returning board in the matter of a city election, held under the charter of the City of Opelika. The

[State ex rel. Harmon v. Hamil et al.]

mayor and council were the returning board. The charter provided, "That the votes shall be returned to the existing mayor and council, whose duty it shall be, within five days after the election, to count the votes, and compare the poll lists with the registration lists, and reject all votes cast by persons whose names do not appear registered, &c.   .   .   . It is perfectly clear to our mind that the duties intended to be imposed on the board by this section are ministerial, and in no sense judicial—that they are constituted mere canvassers, or supervisors of the election returns, and have no authority to exercise the judicial power of investigating or determining the validity of the election."

Although it is affirmed in this case that the duties of the returning board were purely ministerial, that remark was not necessary to a decision of the question presented. The power of the court was invoked, not for the purpose of compelling the returning board to change action previously taken by it. The purpose was to compel it to act—to canvass the votes and make the return, the board having refused to do so. This is shown in the following language copied from the opinion: "The relator alleges the failure and refusal of the municipal board to count the votes as shown in the returns made to them, and to certify the result, as was their duty under the charter; and the prayer of the petition is to compel the performance of this duty."

While *mandamus* is in no sense a remedy to direct or command what particular judgment shall be rendered in any particular case, yet, in a proper case, it will lie from a superior to an inferior court to compel it to hear and decide a controversy of which it has jurisdiction, or, where the cause has been heard, to compel such inferior court to act, and render judgment or decree. In other words, it compels action, but does not control the direction it shall take. So, whether the returning board's function was judicial, *quasi* judicial, or ministerial, was not a material inquiry. The process of *mandamus* was invoked to compel action, not to control its direction.—*State ex rel. v. Williams*, 69 Ala. 311; *Ex parte State Bar Asso.* 92 Ala. 113.

Although the case of *Leigh v. State ex rel.* is reported in an earlier volume—69th—it was decided after the decision in the case of *Hudmon v. Slaughter*, reported in 70th Alabama. That case—*Leigh v. State ex rel.*—grew also out of a special election; an election to fix the *situs* of the county court-house. Following the lead of *Hudmon v. Slaughter*, we held in that case that the duties of the supervisors were simply ministerial, but we refused to grant any relief. We

showed, first, that the statute had made no provision for a
contest of the election; and, in the second place, that, owing
to the peculiar nature of the election, *quo warranto* would
not lie.    On this subject we said: "We are satisfied that the
declared results of the present election can not be contested
by *quo warranto*, nor by our statutory proceedings in the
nature of a *quo warranto*.  ·  · . We have thus reached the
conclusion that our statutes furnish no means of contesting
the election of county site of Escambia county, and that it
can not be tried on an information in the nature of a *quo
warranto*."    Yet, notwithstanding we showed the relator
was without any other remedy, we expressly denied the
writ of *mandamus* which was prayed for in that case.
Speaking of our statutory changes of the common law writ
of *mandamus*, we said:  "They furnish no authority what-
ever for going behind the answer or return, and, leaping
over the matter of the return, entering upon the trial of a
contested election.    Such contest would be beyond the
scope of a *mandamus*, as always understood and adminis-
tered in this State, and is equally without the purview of a
controverted return.    It would, in the name and form of a
proceeding to compel the county officers to keep their offi-
ces at the court house, be, in substance, a hotly contested
suit, to determine which of two places was and is the law-
fully elected court-house town.    This would be to dwarf
out of sight the simple issue ostensibly presented by the
pleadings, in the magnitude and intricacy of the incidental
inquiry, the necessities of the relief prayed make an indis-
pensable condition precedent."

The case of *Leigh v. State ex rel.*, from which we have
quoted, was, in principle, very like the present one.    In
that case, as in this, the board of supervisors, or returning
board, had made its report of the ascertained result of the
election, which report the petition averred was illegal and
untrue.    It was sought, through process of *mandamus*, to
compel the board of supervisors to change its report.    This
would have involved a recanvass of the ballots, and an in-
clusion in the count of certain votes or boxes which, it was
charged, had been improperly omitted from the computa-
tion.    This, it was alleged, would change the result, as as-
certained and reported.    Yet, notwithstanding we reached
the conclusion that the relators in that case were without
other remedy known to the law, we denied them the relief
they sought.    We held that the grievance they complained
of was not within the purview of the writ of *mandamus*.
The object of the present application is also to have the re-

port of the supervisors declared incorrect, to compel a recanvass, and, by a rejection of certain boxes, charged to have been improperly computed, to entirely change the result as originally reported. This is outside of the remedial powers of a writ of *mandamus*.

There is another complete answer to the present application. The statutory writ of contest was clearly open to the relator in this case. It afforded an adequate remedy, having larger and more flexible powers than that of *mandamus*. It is fundamental law that *mandamus* never lies, if the law furnishes any other adequate remedy. In *Leigh v. State ex rel. supra*, we said, "to authorize the grant of this writ, there must be shown a clear, specific legal right, and no other adequate legal remedy." So, in High Ex. Leg. Rem. § 49, it is said: "In all cases where other adequate and specific remedy exists at law for the grievance complained of, the writ of *mandamus* is never granted."

In any aspect in which we can view this case, even if we concede that there is merit in the case made by the relator, he is not entitled to relief through the instrumentality of a *mandamus*.

Affirmed.