[Parks. v. State ex rel. Owens.]

# Parks *v.* State *ex rel.* Owens.

# Hilliard *v.* State *ex rel.* Brown.

# Worthy *v.* State *ex rel.* Reeves.

# Gibson *v.* State *ex rel.* Allen.

*Informations in the Nature of Quo Warranto to Test the Legality of an Election.*

1. *Legislative authority to provide for contest of election.*—The legislature has the clear right to define the grounds on which elections may be contested and to make them broad or restricted, and the courts can not give to the statute an interpretation either larger or smaller than its words import, as understood in their natural, plain, ordinary and genuine signification as applied to the subject-matter of the statute.

2. *Validity of election case not tested by procedure in the nature of quo warranto.*—The validity of an election can not be contested, by the aggrieved party, by a procedure in the nature of *quo warranto* under Code 1886, pt. 3, c. 14, whether the particular wrongs complained of are prescribed, or not, in the sections of the Code providing the mode and grounds for contesting elections.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN R. TYSON.

At the August election 1892, appellees and appellants were candidates for the following offices, to-wit., W. J. Hilliard and T. H. Brown were candidates and voted for, for the office of judge of probate of Pike county, Alabama; W. H. Parks and A. H. Owens were candidates and voted for, for judge of the Criminal Court of Pike county, Alabama; O. Worthy and Lucius Reeves were candidates and voted for, for the office of clerk of the Circuit Court of Pike county, Alabama, and M. V. Gibson and T. J. Allen were candidates and voted for, for the office of tax collector of Pike county, Alabama.

On the 6th day of August, 1892, the board of supervisors of Pike county, Alabama, in due form of law, met and canvassed the votes cast at said election and in due form declared and published that W. J. Hilliard had received the highest number of votes cast for the office of judge of probate of said county of Pike; that W. H. Parks had received

[Parks v. State ex rel. Owens.]

the highest number of votes cast for the office of judge of the Criminal Court of said county; that O. Worthy had received the highest number of votes cast for the office of clerk of the Circuit Court of said county, and that M. V. Gibson had received the highest number of votes cast for the office of tax collector.

The cases of Owens . v. Parks, Reeves v. Worthy, and Allen v. Gibson, were submitted by written consent of counsel, and on the 21st of September, 1892, W. J. Hilliard, as judge of probate, rendered judgment dismissing the contests. The judgment in each of the other cases were identically the same, and L. Reeves, T. J. Allen and A. H. Owens appealed their said cases to the Circuit Court of Pike county, Alabama, and on the 24th day of April, 1893, without any notice to appellants, Park, Worthy or Gibson, by an endorsement in writing on the docket opposite to the statement of the cases, dismissed their said appeals. Upon the same day they filed their petitions in *quo warranto* under the statute of this State, part 3, title 2, chapter 14, section 3167 *et seq.* Code of 1886, which said petition sets up, substantially the same omissions and neglects and grievances as is set up in the petition of contests, and bases their right to relief upon the same grounds.

After alleging various irregularities of the election, such as making false returns, &c., the relators pray that the defendants "be required to show by what warrant or authority they now hold or exercise the offices" respectively contested, and they further pray that judgment be rendered excluding the said defendants from their respective offices, and that the rights of the relators thereto be adjudged by the Circuit Court.

The opinion states the principal defense set up, rendering it unnecessary to make a fuller statement of facts.

JOHN GAMBLE, M. N. CARLISLE and R. L. HARMON, for the appellants.—Could these elections have been contested under Code of 1886, sections 396 *et seq.?* If so, then this proceeding by *quo warranto* will not lie. See Code 1886, section 3177. The Code of 1886 furnishes and provides for the contest of these elections, prescribes the grounds and mode of procedure, names the officers or tribunals, and clothes them with full authority and power to entertain, hear, and determine these contests and render judgment therein which shall be binding on the parties and conclusive of the question passed on and judicially determined, until set aside or annulled in some mode provided by law.

[Parks v. State ex rel. Owens.]

This statutory mode having been provided, it is exclusive and none other can be pursued. See High on Extraordinary Legal Remedies, § 617; *The State ex rel. v. Marlow*, 15 Ohio State Rep. 114; *Ingerson v. Berry*, 14 Ohio State Rep. 326, 327; *Commonwealth ex rel. v. Garrigues*, 28 Penn. State, 9; *Commonwealth ex rel. v. Baxter*, 35 Penn. State, 263; *Commonwealth ex rel. v. Isaac Leech*, 44 Penn. State, 332; *State ex rel. Anderson v. Gassett*, 9 Tenn. R., (B. J. Lea,) 644; *A. B. Conner ex rel. v. J. C. Conner*, 8 Baxter, Tenn. R. 11; *Moulton v. Reid*, 54 Ala. 328; *Echols v. Dunbar*, 56 Ala. 131; *Leigh v. O'Bannon*, 69 Ala. 266; *Bateman v. Megowin*, 1st Metc. (Ky.) 533. The petition fails to show this election could not have been contested under the Code of 1886. All the petition shows, is, that this court decided that the petition which appellees filed, to contest their election, was insufficient, and that they could not set forth any of the causes prescribed in the 1st, 2d, 3d or 4th subdivision of section 396, Code of 1886, as a ground of contest, but it is not shown in said petition why they could not show or set out a statutory ground of contest. It is not averred that no statutory ground of contest existed either in point of fact, nor that they knew of no such statutory ground for contesting said election. The fact that appellees could not set forth in their said petition for contest any statutory ground does not authorize this proceeding. The plain question recurs: might this election have been contested under the Code of 1886? If it could have been contested then *quo warranto* will not lie, and the court had no jurisdiction to hear or try this case. See in support of this proposition 3d Vol. Brickell's Digest, p. 587, § 7, and authorities there cited.

The petition seeks to go behind the returns and inquire into the validity of the election as certified and declared by the board of supervisors, and sets up the official misconduct of the election officers which can not be done by *quo warranto*. This court, in *Leigh v. State, ex rel.*, 69 Ala. 266, say that "It," quo warranto, "can afford no relief for official misconduct, and can not be employed to test the legality of the official action of public or corporate officers," and it follows there was no legal authority under the law in this State for the institution and maintenance of this proceeding. See authorities hereinbefore cited. Quo warranto will not lie in these cases, the Code of 1886 having fully provided for a contest of the election sought to be inquired into, and the validity and legal force of which, as declared by the supervisors, is sought to be set aside by appellees. Section 3177 Code of 1886 does not provide that *quo warranto* will lie if

[Parks v. State ex rel. Owens.]

insufficient pleadings are filed, which fail to give the court jurisdiction. Nor that *quo warranto* will lie unless the election could have been successfully contested under the Code of 1886. But the plain language of the Code is, "The validity of no election which may be contested under this Code can be tried under the provisions of this chapter."—§ 3177. This language, we submit, is too plain to be misunderstood. Now what election can be contested under the Code? No election can be contested until the board of supervisors have canvassed and declared who it is that has been elected.—§§ 337, 388, 396, 416 and 428. Hence the election mentioned in section 3177 must of necessity mean the election of such person as has been declared elected by the board of canvassers or supervisors; because none other can be contested. This election, thus declared, entitles the party declared elected to a certificate of election, and a commission, and to give any other construction would make section 3177 meaningless. Now what is meant by the phrase, "The validity of no election," &c.? The word "validity" is defined by Worcester to be "Legal strength or force; the quality of being good in law." Now the validity of this election plainly means, the legal strength or force of the election which declared, in the form of the law, appellants elected, can not be inquired into in this proceeding. If the same may be contested under this Code might not this election on the first Monday in August, 1892, and for months afterwards, have been contested under the provisions of the Code? We insist it could have been done. That the appellees attempted to contest this election and failed, is too clear to admit of doubt, and the mere fact of their failure can not change the plain language of the statute or add a condition or proviso thereto, not therein expressed, nor can such failure to succeed in such contest give the right to go before another and different tribunal and in another and different proceeding, though founded on the same causes, omissions, wrongs and short comings of election officers as is set out in the petition of contest, and obtain a hearing thereon, and have a different judgment rendered thereon in favor of the opposite party. If this were the policy of our statutes, then the inevitable result would be that there would be two separate judgments as to the same subject-matter, and as we insist between the same parties, rendered by different courts, each having full authority and jurisdiction conferred by statute, neither of which courts have in these proceedings appellate or supervisory power or authority in the case as to the proceedings instituted, and each judgment thus rendered of full

[Parks v. State ex rel. Owens.]

force, and it may be asked to which of these judgments shall the parties yield obedience and by which are the parties bound? Parks may say in truth, the subject-matter of these proceedings has been decided in my favor, and decree rendered which is of force and to which Owen was a party and upon which I rest my claim; and Owen replies, this is true. But upon the petition of *quo warranto* to which you, Parks, are a party, here is a judgment in my favor, which is also of force, and I rest my claim to this office on this latter judgment. Could it be supposed or imagined that the legislature ever intended such a conflict, or was so negligent or shortsighted, as not to anticipate such conflict, or to see the manifest evil result, of the passage of these two systems of laws relating to the same subject-matter, and to remedy one and the same wrong. This would be quite an unwarrantable supposition,—nay, rather, is it not the more reasonable and legal supposition that the legislature saw this strange and damaging conflict, and in order to prevent the same, and to leave no room for doubt Section 3177 of Code was passed, providing that "the validity of no election which may be contested under this Code can be tried under the provisions of this chapter. This section of the Code has been before the Supreme Court more than once, and in *Reid* and *Moulton,* 54 Ala. pages 327 and 328 this court say, Brickell, C. J. delivering the opinion of the court. In *Ex parte John Reid, Jr.* at the January "term, 1874, I expressed the opinion, the special remedy pre-"scribed by the charter for the contest of municipal elections "excluded the common law remedy for information in the nature of *quo warranto.*" And the Chief Justice in order to show the correctness and full research of the Supreme Court, goes on further to say in the same opinion, page 328, that, "In arriving at this conclusion, not only the words of the statute, the purpose of its enactment, but the general laws of the State on the subject of contested elections and *quo warranto* were consulted" and deduced from this, the following comprehensive and clear statement. "The general policy, is, that when the validity of an election is the subject of a statutory contest, *quo warranto* shall not lie." This was the unanimous opinion of the Supreme Court, and this case has never since been questioned or doubted. And further the election laws as to contests, provides that the contest of these elections must be commenced within fifteen days after such person is declared elected in the mode and manner as provided in section 416, *et seq.,* and 428, Code of 1886, and section 400 of the same Code, provides what papers connected

with the election shall be preserved and kept, and how far
and to what extent such papers, or rather copies of the same
shall be evidence, and section 423 of the same Code further
provides what authority the judge trying the same has,
which includes the examination of the ballots, and clearly
points out the judgment, the trial judge has authority to
render, which is to give judgment, either confirming or an-
nuling such election altogether, or declaring some other per-
son than the one whose election is contested duly elected."
And section 384 of the Code of 1886 provides how the bal-
lots and poll list shall be disposed of." Now there is no
time within which *quo warranto* shall be instituted, and it
may be instituted if the theory claimed by the appellee's
counsel be the correct one, after the ballots have been de-
stroyed according to the requirement of section 384 of the
Code; could it be presumed that the legislature intended
or that this court will hold that if these statutory require-
ments shall have been disregarded, and the ballots were
kept contrary to the provisions of this statute, that never-
theless they could be used as evidence? Certainly not.
For these ballots can only be retained under the law at most
during a contest, and section 400 of the Code in no uncertain
language provides that, "the inspectors who have the cus-
tody of the box containing the ballots, may be required by
subpœna, *duces tecum*, on the trial of the contest to produce
the original poll list and ballots, filed and kept by them for
examination, which shall be *prima facie* evidence of the fact
that the person named on the poll list voted." This is all
the statute makes them evidence of. Now these statutory
provisions apply to contest and to contest alone, and unless
it be held that this proceeding in the nature of *quo warranto*
is a statutory contest, these statutory provisions do not ap-
ply, and if these provisions apply to the proceedings in these
cases which are in the nature of *quo warranto*, because they
are in substance and effect a contest of these several elec-
tions, then they must fail, because not commenced within
fifteen days after the appellants were declared elected.
Construing all these sections of the Code in *pari materia*,
as relating to the same subject matter as a whole, it cannot
be otherwise than the legislative intent was to make the
statutory contest the exclusive and only remedy; and couple
this with the clear and plain language of section 3137, the
legislative intent that the remedy by contest is exclusive and
*quo warranto* will not lie, is too manifest to be questioned.
*O'Docherty v. Archer*, 9 Texas, 295; *Dudley v. Mayhew*,
3 Comst. 9; *Smith v. Lockwood*, 13 Barb. 209; *State v.*

*Martin,* 15 Ohio State, 114; *Commonwealth v. Gorrigins,* 28 Penn. State, 9; *Commonwealth v. Corringins,* 35 Penn. State, —; *Commonwealth v. Leech,* 44 Penn. State, 332. But it is insisted this proceeding is between different parties to the contest proceeding. That the right to contest is confined to individuals who are qualified electors whereas the right sought here to be enforced under Part 3, Title 2. Chapter 14 of the Code must be brought in the name of the State on the information of any person, and the informant shall be or may be joined as plaintiff with the State. The statutory proceeding is entirely different from the common law writ of *quo warranto* in many essential particulars. The common law writ of *quo warranto* was not employed and could not have been resorted to for settling and determining the rights of rival claimants to an office, and in order to meet this supposed omission or defect in the power and scope of the original common law writ it was enlarged by the statute of Anne and it has further been extended under our statutory provisions as contained in sections 3167 to 3183 both inclusive. And it is manifest from section 3173 that the legislature under this system of laws regarded the informant as the sole party when joined with the State as in this case, for the plain reason that upon the death of the informant, if there is no survivor, or substitution of another informant, the action abates. The State cannot die, and if the suit was intended by the legislature as a suit of the State it could not abate. But it being understood and clearly the policy of this section to regard the action as that of the informant, and not the action of the State, we can see how the action may abate upon the death of the informant. Now this information being for the sole benefit of A. H. Owen the informant and resorted to for the purpose of settling the rival claims of himself and Judge Parks to the office of judge of the Criminal Court of Pike county it must be held to be his suit and not the suit of the State. And the court cannot fail to see by an examination of the petition for *quo warranto* and the petition for the contest of this election, both of which are set out in the record that they are essentially the same, and base the right to relief upon identically the same facts, omissions, neglects and wrongful and illegal conduct of the election officers, and are between the same parties as we have shown, and hence *quo warranto* cannot lie under the plain inhibition contained in section 3177, Code of 1886, and this being the case, the Circuit Court had no jurisdiction to hear and try this action. The settled doctrine of this State, and the settled legislative policy of this

[Parks v. State ex rel. Owens.]

State is, that when the validity of an election is the subject of a statutory contest, *quo warranto* shall not lie. See *Moulton v. Reid*, 54 Ala., page 328 of opinion; *Echols v. Dunbar*, 56 Ala. 131; *Leigh v. O'Bannon*, 69 Alabama, 266 of opinion; *Batement v. Megowan*, 1 Metc. Kentucky, 531; *The State ex rel v. Marlowe*, 10 Ohio State, 114.

But Appellees insist that on the 10th day of February, 1893, the legislature repealed absolutely and unconditionally all of the laws then of force in this State regulating the contests of State and county offices under the Code without any reservation as to pending contests, and that therefore they had no right to contest at the time of filing the petition for *quo warranto* in these cases. But it must be observed that from the 6th day of August, 1892, to the 10th day of February, 1893, appellees had the clear right to contest these elections, and the very act which repealed the contest laws under the Code, enacted a system of laws for the contest of elections in this State. See Acts of 1892 and 1893, p. 468. But concede to the fullest extent all that is claimed by the appellees on account of the repeal of the laws, then if any injury was done appellees it must have been by the law as passed by the legislature. And this court in *Moulton v. Reid*, 54 Ala. 328, say: "The law injures no one is a maxim which inculcates obedience to law. Where positive law in point of fact injures, it is the "legislature which must furnish the correction; courts can not." See also Brown's appeal 66, Penn. 157.

R. L. HARMON, for the appellants,—*Quo warranto* is not the remedy for contesting an election to a public office in this State, and the proceedings had in the Circuit Court in these cases were void, for want of jurisdiction. The legislature evidently intended the statutory mode of contest to be final, and the jurisdiction of the tribunal, provided by statute, to be exclusive; see Code of 1886, section 396, *et seq.*; also section 384 of the Code, directing the ballots to be destroyed at the expiration of 60 days, after the declaration of the result of the election. See also section 3177 of the Code of 1886, and compare the title of this section with the title of section 3432, of the Code of 1876. The chapter on *quo warranto* was not intended to be used for contesting elections to those offices coming within the purview of the statutes, which provide a mode of contest; for, if *quo warranto* will lie in such cases, the election of persons to these offices may be contested at any time during the term of office, long after the time when the law requires the ballots

41

[Parks v. State ex rel. Owens.]

to have been destroyed, and there is no provision of law for keeping the returns, after they are canvassed by the Board of Supervisors. It would seem absurd, to contend that the legislature intended, that a person in his own name, or upon the relation of the State, might contest a persons election, to an office, and assert his own title, and at the same time enact laws requiring the destruction of the ballots, and all other practical evidence of who was elected to such office, long before the time when such relator or contestant is required to file his writ, or commence his contest. The legislative intent should be ascertained, and when this is done, it is final and conclusive, the court is powerless to add to or subtract from it. See Sutherland on Statutory Construction, sections 218 and 219, also sections 234 to 241, inclusive; see Endlich on Interpretation of Statutes, sections 433 and 434 and notes. The right of a person to contest an election is legislative and political, and it is within legislative discretion and power to deny the right of contest, and make the declaration of the Board of Supervisors final and conclusive, or the legislature may provide a mode of contest, and also provide the tribunal, and make the remedy and jurisdiction final and exclusive. See Code of Tennessee, 1884, section 4160, and authorities there cited. In *State v. Wright*, 10 Heiskell, 237, the validity of the election was not only admitted, but it was also admitted that the Supervisors had canvassed the returns, found that the relator had received the highest number of votes, and he was declared elected; but subsequently, the Supervisors reassembled, made a second canvass of the votes, excluded the vote from one precinct, on account of fraud, and gave the certificate of election to the defendant. It is clear that the Supervisors were bound by the first canvass, and the second count made by them was *functus officio* and void, see Am. & Eng. Ency. of Law, vol. 6, page 307 and note; 21 Ohio St. R. 216; see also the later case, 9 Lea 644; 8 Baxter 11; *Marlowe v. State*, 15 Ohio St. 114; *McCurdy v. Isaac Leech*, 44 Penn. St. R. 332; *Hulseman v. Rems*, 41 Penn. St. R. 396; *Commonwealth v. Carrigues*, 70 Am. Dec. 103 and note; *Clark v. Rogers*, 81 Ky. 43; *Moulton v. Reid*, 54 Ala. 320; *Reid v. Moulton*, 51 Ala. p. 279, *et seq.*; *Davidson v. State*, 63 Ala. 432; *State v. Tucker*, 54 Ala. 205. In Indiana there is a statute which says, "that *quo warranto* will lie to contest an election, *non obstante* the statutory mode of contest," and some other States have similar statutes; in such States the decisions seem to be in conflict with the decisions above cited; but in Alabama, and in all of the States having statutes simi-

lar to the statutes of Alabama, the law seems clear, that
the statutory mode of contest, and the jurisdiction of the
tribunals provided for trying such contest cases, is exclu-
sive, and binding on the State as well as upon individuals,
in cases like the one at bar. This reasoning is founded
alike upon justice and common sense, and is in harmony with
the spirit and policy of our laws and government. If this
were not so, there would be no end to litigation, for, where
a defeated candidate was unsuccessful in a statutory con-
test, he would renew his suit upon the relation of the state
in a *quo warranto* proceeding, thus harrassing the officers,
who have been declared elected by the people, and com-
missioned by the State. The construction, which the re-
lators ask in these cases, would deprive the people of the
best and most capable men, who would not consent to be
so harrassed, or who, in many cases would not be able
to defend against repeated, tedious, and expensive suits ;
see *Ecohls v. Dunbar*, 56 Ala. on p. 135 ; *Bateman v. Mego-
wan*, 1 Metc. (Ky.) 533 ; *Reid v. Moulton*, 51 Ala. p. 279,
cited and approved in 54 Ala. at the bottom of p. 327 ;
Brown's appeal, 66 Penn. 167. In the case of *Davidson v.
State*, 63 Ala. on p. 434, this court said "parties can not be
allowed to speculate, in this manner, on gaining advantage
of an adversary, who, if the decision go against him, will
be bound by the judgment, and then be heard to contend
that they are not bound thereby, if it go against them."
The writ of *quo warranto*, as regulated by statute, has its
full force and operation in this State, for contesting the
election of persons to offices, where the legislature creates
an office, which does not come within the purview of the
general contest law, and no provision for a contest is made,
and the count of the board of Supervisors is not made final ;
see *Echols v. Dunbar*, 56 Ala. 131 ; or, where, by some act or
omission, the office has become vacant, as in *Beebe v. Robin-
son*, 52 Ala. 66 ; *Davidson v. State*, 63 Ala. 432 ; or where a
person intrudes into an office without having the proper
commission ; or attempts to hold an office after the expira-
tion of his term, and other like cases. The legislature
had the power to limit the right to contest an election to
particular grounds, and if apparent hardships arise from
the exercise of this discretionary power, it is well illustrated
in *Tucker v. The State*, 54 Ala. 205 ; *Leigh v. State*, 69 Ala.
261 ; *O'Docherty v. Archer*, 9 Texas, 295 ; but the correction
is for the legislature and not the courts. The legislature,
in Acts of 1892 and 1893, p. 468, amended the general con-
test law, by adding a ground of contest, viz: "On account

of the rejection of legal votes." Also by substituting the word "*malconduct*" for "*misconduct*" in the 4th, ground of contest, thus restricting it. If they had intended that an election, coming within the purview of the statute, should be contested on any other ground than those named, they certainly would have added it. Relators contend, that the repeal of the contest law, revived *quo warranto*. If there was any merit in this contention, it could not apply in these cases, for the petitions allege, that they did not, in their statutory proceedings, allege any statutory ground of contest, hence, the proceedings were *coram non judice* and void, and if a ground of contest existed, it was lost, or barred by the statute, long before the law was repealed; see *Hilliard v. Brown*, decided at the last fall term, from Pike county, 97 Ala. 92. Also, Constitution of Alabama, Art. 4, section 56, on p. 82, of the Code of 1886.

J. D. GARDNER, for the appellees.—1. *A quo warranto* statute, similar to ours, prevails in the State of Tennessee. That statute was construed in *State ex rel v. M. J. Wright*, 10 Heiskell, 237. The court in that case draws a distinction between contesting the validity of an election and the *prima facie* title to the office under an election that is legally held. 2. That the title to the office comes from an election by the people has been fully settled by this court in *Echols v. The State, ex rel Dunbar*, 56 Ala. 131. 3. Courts of common law, of general jurisdiction, have an inherent power, subject to statutory regulations, to inquire into the regularity and validity of the title to municipal offices, whether acquired by election or otherwise on *quo warranto* or on information in the nature of a *quo warranto*. Of this jurisdiction they are not deprived by legislation prescribing special statutory remedies whereby the same redress may be obtained unless it clearly appears to have been the legislative intent to take it away.—*Moulton v. Reid*, 54 Ala. 320; Paine on Elections, Sec. 868. When the special statutory remedy, by contest, is inadequate, or is so loosely prescribed as to be incapable of pursuit or is unconstitutional and void, the remedy by *quo warranto* remains.—*Moulton v. Reid, supra;* Paine on Elections, § 868; McCrary on Elections, § 307. 4. In this case, we are not confronted by the question as to how far a statutory right to contest supersedes the common law remedy. The great weight of authority is on the side that it does not unless it is plainly made to appear in the statute itself. Our legislature does not seem to have placed any other limitation upon the common law remedy than to say that the validity can not be tried by *quo warranto*, which

[Parks v. State ex rel. Owens.]

may be contested in the statutory proceedings.—Code, § 3177. It is presumed that the legislature intended to make no innovation upon the common law further than the necessity of the case required.—Sutherland on Statutory Construction, section 290, and authorities cited in note. 5. The attention of the court is called to the fact that the answer admits that the election was legally conducted. This does away with a large number of objections and exceptions which are based upon the proposition that the plaintiff must show that the election was legally held. 6. The answer does not put in issue the allegations of the petition as to the number of votes received at the different precincts not canvassed by the board of supervisors. Taking the answer as a whole, it is fair to. infer therefrom that respondents do not intend to deny the statement in the petition that the petitioners received a majority of all the votes cast in the county; but that they only put in issue the fact that they were legal votes without stating in what respect they were illegal. As to what the answer must contain, see *Regina v. O'Reilly*, 8 U. C. Q. B. 617. 7. That the ballots were the highest evidence, see *State v. Judge*, 13 Ala. 815. In that case it does not appear that the directory provisions of the statute in reference to the preservation of the ballots were complied with. The court will see from the facts recited in the bill of exceptions that the ballots, introduced in evidence, were preserved with scrupulous care and have been under official watch care ever since they were placed in the ballot boxes. If they had been introduced to impeach the returns of the election managers, no doubt could have arisen of their genuineness. 8. As it is manifest that the appellees were entitled to the affirmative charge, any error of the court in the charge given or a refusal of the charges asked were harmless. 9. The ballots were not counted and the presumption will be indulged that they sustained the allegations of the petition as to the number of votes each one received. 10. That the statute was inadequate for this case has already been decided by this court in the case of, *W. J. Hilliard v. T. H. Brown*, 97 Ala. 92. All the appellants in the cases involved in this appeal made the defense in the proceedings for a contest under the statute, that none of the grounds authorizing a contest existed; and they are estopped in this proceeding from saying that grounds for contest did exist, and that we ought to have pursued the other remedy.—*Hill v. Huckaby*, 70 Ala. 183; *Caldwell v. Smith*, 77 Ala. 164.

[Parks v. State ex rel. Owens.]

STONE, C. J.—These four cases were by consent tried together in the Circuit Court, and, by like consent, were argued and submitted in this court as one case. The facts in each of the cases are substantially the same, and each and all of them are dependent on the same legal principles. They were informations in the nature of *quo warranto*, intended to test the correctness and legality of the declared result of the election of certain county officers of Pike county, who were voted for at the August election in 1892. They are proceedings under Ch. 14, Tit. 2, Part 3 of the Code of 1886, commencing with section 3170 of that compilation of statutes. The chief defense relied on is, that under our sys- tem, the remedy invoked in these cases is not open to the relators, and that for that reason the judgments should have been in favor of the defendants. This defense was raised by demurrer and by plea or answer to the petition. The Circuit Court ruled against its sufficiency, and granted relief to the relators. From that judgment the present appeal is prosecuted.

At the time this election was held—August, 1892—we had a statutory system in force which provided expressly for a contest of the election of each of the officers, which furnish the subject of the controversy shown in this record. It was very comprehensive in its terms, embracing "The election of persons declared elected to any office, whether State, county, representatives in congress, or to any office which may be filled by a vote of the people;" and it provided that the contest might be inaugurated "by any qualified elector." It enumerated the causes of such contest, under four speci- fications, as follows :

1. "Malconduct, fraud or corruption, on the part of any inspector, clerk, returning officer, or board of supervisors.

2. When the person, whose election to such office is con- tested, was not eligible thereto at the time of such election.

3. On account of illegal votes.

4. Offers to bribe, or bribery, or any other misconduct calculated to prevent a fair, free and full exercise of the elective franchise ; but no person shall contest the election of any person on account of race, color, or previous condition of servitude." A contest under this statutory provision was required to be instituted within a prescribed time, which had elapsed when these proceedings were instituted.

The statute remained as stated *supra*, until it was re- enacted—somewhat modified in form and substance—by act approved February 10, 1893,—Sess. Acts 468. The later statute expressly repealed the former one, as to all the pro-

visions which affect the question presented by the record
before us; but it expressed an additional ground of contest—
"On account of the rejection of legal votes."

We have, since 1852, had another statutory system in
force, by which the right of persons exercising official func-
tions can in certain conditions, be tested. It is an informa-
tion in the nature of a *quo warranto*, and commences with
section 3170 of the Code of 1886. Its provisions as applica-
ble to the case before us, are that "When any person usurps,
intrudes into, or unlawfully holds or exercises any public
office, civil or military, or any franchise within this State,
or any office in a corporation created by the authority of
this State," an action may be maintained to redress the
wrong. This mode of redress, and of ousting persons ille-
gally in office had long been in force, and received additional
vitality and energy from the English statute of Anne. Many
of the States have enacted statutes regulating its use, so
that it has gotten into very general use, as a means of get-
ting rid of persons who intrude into, or unlawfully hold
public offices. In many of the States, as in our own, they
recognize the continued existence of this remedy, while at
the same time, they, like ourselves, have special statutes
providing for a contest of elections. And the question has
often been raised, whether such statutory contests, when
provided for, take the place of, and supplant the common
law writ of *quo warranto*, or rather, information in the na-
ture of *quo warranto*. The general ruling on this question
is that the statutory contest does not displace the older
remedy by *quo warranto*, unless the statute so declares, or it
is implied in its terms. That in the absence of such ex-
pression or implication, the statutory remedy is cumulative.
In McCrary on Elections, § 345, the principle is thus ex-
pressed: "The true doctrine seems to be that a special
remedy given by statute is cumulative, and not exclusive of
the ordinary jurisdiction of the courts, unless the manifest
intention of the statute be to make such special remedy ex-
clusive, and such intention must be manifested by affirma-
tive words to that effect." Mechem, Pub. Officers, § 24 says:
"In several of the States special tribunals have been created
for the trial of election contests, but where this is not the
case, the ordinary courts of law are to be resorted to.
Where such a special tribunal has been created, individuals
desiring to institute proceedings must, where such appears
to have been the intention, have recourse to that tribunal
alone, and can not, in general resort to the courts of law."
In Paine on Elections, § 860, is this language: "When the

[Parks v. State ex rel. Owens.]

statue creates a special tribunal and prescribes special proceedings for the trial of contested election cases, and the tribunal, to which jurisdiction is given is vested with full powers to adjudicate all questions involved in such cases, the courts will not take jurisdiction by *quo warranto*, at common law, even in cases of fraud on the part of the officers of election, or candidates." In High on Ex. Leg. Rem. 617 the doctrine is thus stated: "Where a specific mode is provided by statute for contesting elections, and a specific tribunal is created for that purpose, and the method of proceeding therein is fixed by law, resort must be had to the remedy thus provided, and proceedings by information in the nature of a *quo warranto* will not be entertained." The quotations from the last two authors are supported by *Com. v. Leach*, 44 Penn. St., 332; *Com. v. Garaigues*, 28 Id., 9; 70 Amer. Dec. 103; *Com. v. Baxter*, 35 Id. 263; *State v. Marlow*, 15 Ohio St. 114; *People v. Every*, 38 Mich. 405.

The following authorities hold that the enactment of special provisions, or the creation of a special tribunal, one or both, does not, without more, supplant, or take away the right to controvert and try the validity of an election, under *quo warranto* proceedings.—*Atty. Gen. ex rel v. Barstow*, 4 Wisc., 567; *State ex rel. v. Messmore*, 14 Wisc., 115; *People ex rel. v. Hall*, 80 N. Y., 117; *Kane v. People, ex rel.*, 4 Neb. 509; *State ex rel. v. McKinnon*, 8 Ore. 493; *People ex rel. v. Holden*, 28 Cal. 124; *State ex rel. v. Frazier*, 44 N. W. Rep. 471; *People ex rel. v. Londoner*, 22 Pac. Rep. 764; *State ex rel. v. Boyd*, 48 N. W., 739; *Dudley v. Mayhew*, 3 Comst. 9; 1 Dil. Corp. § 202; 2 *Ib.* § 891.

We do not consider it necessary to discuss, or criticise the somewhat varying phraseology employed in the foregoing citations. The case we are considering must be determined by the language of our statute and its proper interpretation.

As part and parcel of our statutory *quo warranto* system, it is provided, § 3177 of the Code of 1886, that "The validity of no election which may be contested under this Code can be tried under the provisions of this chapter." This whole chapter, with all its provisions, was adopted and made part of the Code of 1852, commencing with § 2651 of that Code. Section 2654 of that compilation corresponds to section 3082 of the Code of 1867, § 3422 of the Code of 1876, and to § 3170 of the Code of 1886. Section 2664 of the Code of 1852 was in the following language: "The validity of any election which may be contested under this Code can not be tried under the provisions of this chapter."

VOL. C.

[Parks v. State ex rel. Owens.]

That language was carried without change into the Code of 1867, § 3092, and into the Code of 1876, § 3432. The slight change in the words of the section, as shown in the copy, first above given, is for the first time found in the Code of 1886, § 3177. That change in the words can not lead to a change of interpretation, for the phrase, *the validity of any election can not be tried*, is certainly the synonym and equivalent of that other phrase, *the validity of no election can be tried*.

Several cases of controverted elections have been before this court, while our statutory provisions governing the remedy of *quo warranto* as applicable to such cases have remained substantially unchanged. Some of those provisions we have copied above. The case of *Ex parte Lambert*, 52 Ala. 79 ; *Ex parte Harris, Ib.* 87 ; *Moulton v. Reid*, 54 Ala. 320, and *Hudmon v. Slaughter*, 70 Ala. 546 do not appear to shed any light on this question. In *State ex rel. v. Tucker*, 54 Ala. 205, possibly the question might have been raised and considered. It was not done, but relief was denied on other grounds. In *Echols v. State ex rel.* 56 Ala. 131, *Clark v. Jack*, 60 Ala. 271, *Leigh v. State ex rel.* 69 Ala. 261, and *Savage v. Wolfe, Ib.* 569, we held that the statutes had made no provision for a contest in those cases, and hence, no ruling was, or could be made affecting the question with which we are now dealing.

In *State ex rel. v. Hamil*, 97 Ala. 107, is found a remark not necessary to a decision of the case, which, if not an error, would at least tend to mislead. Under the facts of that case the common law writ of *quo warranto* would not lie. There was, however, a clear right to contest under the statute, and that supplied all that was necessary to make the argument complete. Having an adequate remedy by statutory contest, there was no authority to resort to *mandamus*.

One of the cases embraced in this proceeding—that of *Brown v. Hillard*, being a contention over the probate judgeship of Pike county—has been heretofore before us.—97 Ala. 92. That was a contest before the circuit judge under § 428 of the Code. The judge of the Circuit Court sustained the contest, and decided that Brown, the contestant, was entitled to the office. The case was then brought by appeal to this court, and we held that the statement of the grounds of contest made to the circuit judge, and on which he tried the case, failed to make a case within § 396 of the Code, and, hence, failed to make a case for which statutory contest would lie. We said : "It is a principle of law too long and well settled to be now the subject of contention, that the

record, or *quasi* record, of a court or tribunal of special, limited jurisdiction, created by statute whose proceedings are required to be written, must affirmatively disclose every fact upon which, by the statute, the jurisdiction of the court or tribunal is made to depend, in order to sustain the jurisdiction and uphold the validity of the judgment rendered.    •    •    •    •    •    The present proceeding was before the circuit judge, created by statute into a new and special tribunal, with the limited power conferred upon it to enforce a new right conferred by the same statute. The grounds upon which this tribunal may exercise the power, and jurisdiction for which it was created are expressly prescribed, and expressly required, one or more of them, to be set forth in writing, in the statement required to be filed as the institution of the suit or proceeding. They are, therefore, jurisdictional. Without them the tribunal does not legally exist. They must affimatively appear by the record, or else the proceeding is *coram non judice* and void.

Does the statement of contestant Brown contain an averment of either of these necessary jurisdictional facts? A mere inspection of the paper would constrain us to hold that it does not. It is conceded by counsel that the second, third and fourth grounds prescribed by section 396 are not set forth or relied on. The first ground, as we have seen, is thus stated in the statute : "Malconduct, fraud or corruption on the part of any inspector, clerk, returning officer, or board of supervisors." It would seem unnecessary to discuss the meaning of the words, 'mal-conduct, fraud, or corruption,' as they are here used. They are of such obvious signification as to preclude discussion.    •    •    •    •
The statement in the present case given the most latitudinous construction, does not approximate a charge of malconduct, fraud or corruption on the part of either of the officers mentioned in the statute.    •    •    •    • The conduct complained of, though negligent, is entirely consistent with perfect honesty and good faith."

In the foregoing case, we declared that the proceedings before the circuit judge were void for want of jurisdiction; and we ordered them to be quashed.

It is very clear that the case of *Brown v. Hilliard* was rested on the first subdivision of the grounds of contest specified in § 396 of the Code, and that it was decided on that ground alone. The argument made showing that the facts did not make a case for relief under that subdivision is unanswerable.

[Parks v. State ex rel. Owens.]

The issue which has given rise to the main controversy before us, is the inquiry, what are the proper meaning and scope of § 3177 of the Code of 1886? We have copied that section, but for convenient reference we will repeat it : "The validity of no election which may be contested under this Code can be tried under the provisions of this chapter." That chapter, No. 14, Title 2, Part 3, commencing with section 3167, is the chapter which defines the conditions, and prescribes the rules to be observed, when proceedings in *quo warranto* are resorted to for "usurpation of office or franchise." It expressly declares that its provisions cannot be invoked, or resorted to, to try or test the validity of any election, if the Code has made provision for contesting such election. Now, the Code § 396 had made express provision for contesting each of the elections which is involved in this controversy, and in four subdivisions had embodied the grounds of such contest. For either one of the wrongs or improprieties therein enumerated, the election might be contested, and if the charge was sustained, the result would or might be that the person declared elected would be ousted from office. The grounds stated in the statute are very comprehensive in their terms. The first embraces all "malconduct, fraud or corruption" of every person employed in an official or *quasi* official capacity in the conduct of the election, extending up to the time when the result is declared. The second is confined to the eligibility of the person declared elected, and the third, to the receipt of illegal votes. This was perhaps imperfect, in that it made no provision for cases in which legal voters were denied the privilege of casting their ballots. That omission has been supplied and the imperfection healed by the statute of February 10, 1893. The fourth subdivision relates alike to inside and outside interference. Its first clause makes bribery or offer to bribe a ground of contest, but the second clause is generic, and is quite comprehensive. It makes "any other misconduct calculated to prevent a fair, free and full exercise of the elective franchise," a cause of contest.

What is "the elective franchise" ? It is the right or privilege of a qualified elector or voter to cast his ballot freely in favor of the man of his choice, in an election authorized by law to be held.

We return to the question of the interpretation of section 3177 of the Code. Its language is very plain and very simple. If the Code makes provision for the contest of the election, then its validity cannot be tried by a proceeding in *quo warranto*. Relators—appellees in this case—contend

for a narrower interpretation. Their contention is that the section must be interpreted as if written, "The validity of no election which may be contested under this Code can be tried under the provisions of this chapter," for wrong or irregularity committed, which this Code specifies as a ground of contest. In other words, if the contest provided for in the Code furnishes a remedy for the particular grievance complained of, then *quo warranto* cannot be resorted to; but if the wrong be not included in the specified grounds of contest, then *quo warranto* will lie. This they contend, is the extent of the inhibition. They contend further that the wrong and irregularity complained of in this case is not made a ground of contest in either of the subdivisions of section 396, and therefore they were and are entitled to the present remedy. Waiving the inquiry whether the wrongs set forth in this record are, or are not embraced in one of the subdivisions of section 396 as a ground of contest, is the language of § 3177 susceptible of the interpretation contended for? To contest means, to strive to win or hold, to controvert, litigate, oppose, call in question, challenge, dispute, to defend as a suit or other proceeding. Dictionaries. What right have we to say there is no contest, unless it has within it the elements of success? And how can we assume that the legislature did not employ the word contest, or contested in its natural and ordinary sense? What is the subject of this sentence, and what is it the statute declares shall not have its validity tried under proceedings in *quo warranto?* Every one must and will promptly answer, the election. Nothing else was being spoken of. Not every election, but only those which could be contested under the provisions of the Code. These, having had secured to them what was conceived to be an ample and speedy remedy by statutory contest, it was intended they should not be clothed with the additional, optional remedy, which might leave the question of the rightful incumbency of the office in protracted doubt and uncertainty. Can not the right to every one of the offices that are in controversy in the suit before us be contested under the Code? Every one will answer, it may be. Then, on what principle can this case be taken without the influence of the inhibitory clause of the statute.? Again. The statute, in defining the grounds of contest, employs very comprehensive terms. They embrace almost every conceivable wrong that may be perpetrated in the holding of an election, even up to the declaration of the result. The legislature, doubtless, thought they had covered the entire field they intended to

make grounds of contest. They had the clear right to define the grounds on which elections could be contested, and to make them broad or restricted; and they had the equal power and right to declare that the validity of no election should be contested or questioned, save on the grounds and for causes prescribed by them. Shall we arrogate to ourselves the right to say they did not mean what they said? We must, if we can, ascertain the sense and intention of the legislature in and through the words they employed, and we must not be led off by a seemingly hard case to give to the section an interpretation either larger or smaller than its words import. "Words of common use are to be understood in their natural, plain, ordinary and genuine signification as applied to the subject matter of the enactment." Endlich Inter. of Stat. § 2. "When the language is not only plain, but admits of but one meaning, the task of interpretation can hardly be said to arise, [and those incidental rules which are mere aids, to be invoked when the meaning is clouded, are not to be regarded] · · It is not allowable, says Vattel, to interpret what has no need of interpretation. · · The legislature must be intended to mean what it has plainly expressed, and consequently there is no room for construction. · · But whilst it may be conceded that, where its provisions are ambiguous and the legislative intent is doubtful, the effect of several possible constructions may be looked at in order to determine the choice, it is very certain that when once the intention is plain, it is not the province of the court to scan its wisdom or its policy. Its duty is not to make the law reasonable, but to expound it as it stands, according to the real sense of the words."—*Ib.* § 4.

The first codification of the statutes of Alabama, known as the Code of 1852, went into operation January 17, 1853. We have heretofore given a copy of section 2664 of the Code, and have shown that it was continued in force. without any change whatever, until the adoption of the Code of 1886. We have also shown that the change wrought by the Code of 1886 effected no change whatever in the meaning of that section. In 1858 the first Code of the statutes of the State of Tennessee was adopted and went into effect, Meigs and Cooper being the codifiers. Section 3423 of that Code, found in a chapter devoted to proceedings in *quo warranto,* is an exact copy of section 2664 of the Alabama Code of 1852, without change or transposition of any word, letter, or even punctuation point. To suppose this was accidental, would be to suppose almost a miracle. Theirs was manifestly copied from ours.

[Parks v. State ex rel. Owens.]

The case of *State ex rel. v. Wright*, 10 Heisk, 237, was a proceeding on information in the nature of *quo warranto*. The commissioner of registration, the officer charged by their statute with such duty, had certified in his return that W. had received the largest number of votes, and was elected. The information was filed by one C. as relator, who claimed to be and was really elected sheriff, and the purpose was to have W. ousted, and C. proclaimed sheriff. The case was one of great wrong and abuse on the part of the commissioner of registration. Their statute, like ours, had provided for a contest of the election for sheriff, and the question was made that the proceeding by information in the nature of a *quo warranto* could not be entertained. The court, quoting section 3423 of their Code—the same as our section 3117—said, "A cursory reading of the particular section relied on would seem to give force and plausibility to this position." The court then, by a process of reasoning not susceptible of easy comprehension, attempts to answer this interpretation of the statute. The writer of the opinion concludes what he has to say on this feature of the case in the following language: "I apprehend that the statute should be construed as if it read, 'The validity of any election which may be contested under the Code, *by the party who seeks this remedy*, can not be tried under the provisions of this chapter.' If the relator in this case had resorted to the remedy by contest, his petition would have necessarily shown the fact that a majority of the votes actually given were cast for him. This was an election, and he would have been very properly repelled by the answer, that being the elected candidate, and having a clear right to the office by the actual popular vote, he had not adopted the appropriate remedy to recover the office."

We may well inquire, what authority had the writer of that opinion to amend a solemn act of the legislature, by inserting words which give it a totally different meaning? And, in reference to the second subject mentioned in the language quoted. Most contests of elections are based on the averment that the contestant received a majority, or plurality, as the case may be, of the legal votes cast, and that by fraud, or some other wrong he has been counted out, and the contestee improperly proclaimed elected. When fraud or mistake in the count is the ground of contest, the statement of the contestant would be insufficient if it did not show that upon a fair count of the lawful votes cast he had received a plurality, and is, therefore, entitled to the office. His complaint is that by accident, or by a graver wrong, the

plurality of the votes cast for him has failed to be computed, and by that means he has failed to receive the certificate of election to which he was entitled.    This is the groundwork on which he bases his contest, and the most prominent point of his contention—the *sine qua non* of his claim—is, that a plurality of the lawful votes was cast for him.    Can it be, that by thus showing that he had received a majority or plurality of the votes cast, he placed himself in the category or dilemma, in which he could be "properly repelled by the answer, that being the elected candidate, and having the clear right to the office by the actual popular vote, he had not adopted the appropriate remedy to recover the office?" This would be the equivalent of the water test, when witchcraft was punished as a crime.    It is not uncharitable to conjecture that the hardship of this case exerted some unconscious influence in moulding the decision.    The result was right, and possibly the court did not severely scrutinize the methods by which it was attained.    Possibly the relator's proper remedy in that case would have been a *mandamus* to compel the commissioner to file the proper report—the one first made out by him.    At all events, we are not able to perceive on what principle their statutory contest was not open to him, and this was a complete answer to the information in the nature of *quo warranto*, as clearly declared by their statute.—§ 3423.

. Ten years later—9 Lea, 644—the case of *State ex rel v. Gossett*, was tried and decided in the same court, in the same form of proceeding, information in the nature of *quo warranto,* and over the controverted right to the office of sheriff.    At that time, William F. Cooper, one of the authors of the Code of 1858, and one of the ablest and most pains-taking judges that ever sat on that bench, was a member of the court, and delivered the opinion in that case.    The case turned on section 3423 of their Code, identical with section 3177 of ours. The chancellor had entertained the proceeding, and had awarded the office to the relator.    In the Supreme Court the chancellor's ruling was reversed, and the bill dismissed. Among other things, the court, speaking of the case of *State ex rel. v. Wright.* 10 Heisk. 237, said:    "The judge who delivered the opinion of the court adopts the more obvious construction, the jurisdiction under section 889 [the section which provides for a statutory contest] is exclusive, but argues that a bill filed under section 3409, based upon the returns as made, does not dispute the validity of the election, and, is, therefore, not a contest of the election.    It is in this view only a struggle over the *prima facie* case, which enti-

[Parks v. State ex rel. Owens.]

tled the apparently successful party to the certificate of election, leaving the contest of the election to be made by a separate suit in the Circuit Court. The result would be one suit for the form and another for the substance, the latter being postponed until the protracted litigation of the former had terminated. The argument of the opinion does, moreover, assume that the court in determing the *prima. facie* right to the certificate of election, may go behind the certificate, and look at the original returns upon which the returning officer acted. The case did not, however, require a consideration of this point.

"The decision of the court was, therefore, that the commissioner, as the returning officer, had found that the returns showed that the relator was elected sheriff, and had made a certificate of the fact to the relator, and that his subsequent acts were simply void. It was not necessary to go behind his return and certificate. The court merely ascertained the true return, installed the person entitled under it, and removed a usurper, who had no legal certificate.

"The authorities are uniform that, except in a direct proceeding to try the title to the office, the correctness of the decision of the returning officer can not be called in question. McCrary Law of Elec., § 221; Cooley Const. Lim. 778. It is one thing to ascertain that decision, and another thing to impeach it. To go behind it is to contest the election, and such a contest in the case of a sheriff must be made under the Code, § 889;" corresponding to our section 396.

The foregoing extract, and, more fully, the entire opinion, if consulted, demonstrate that the case *State ex rel v. Wright*, 10 Heisk. 237, has been left without a semblance of authority to support it. See also *Batman v. Megowan*, 1 Metc. (Ky.) 533; *Conner v. Conner*, 8 Baxt. (Tenn,) 11; *Hulseman v. Rems*, 41 Penn. St. 396; *O'Docherty v. Archer*, 9 Tex. 295; *State ex rel v. Marlow*, 15 Ohio St. 114; *Clarke v. Rogers*, 81 Ky. Rep. 43; *State ex rel v. Berry*, 14 Ohio St. 315.

The judgment of the Circuit Court is reversed, and this court, proceeding to render the judgment the Circuit Court should have rendered, doth order and adjudge that the proceedings on information in the nature of *quo warranto* be declared null, and that the same be quashed.

Reversed and rendered.