Birchard, J.
This cause was elaborately argued in this court at the December term, 1843, and the following decree entered :
“ The court find that the defendants and the complainant ent' into partnership December 28, a. d. 1839, as set forth in the of said complainant; that the defendants violated said contract o copartnership by appropriating to their separate use money and funds belonging to the copartnership, as in said bill specified ; that the plaintiff, in consequence of the violation by the defendants of said contract of partnership, on November 16, 1840, gave notice of the dissolution of .the same, and rightfully dissolved the *same, and that the equity of the case is with the plaintiff, and that the parties are entitled to an account.”
A reference was therefore directed, without further findings, to take the account in different forms.
At the last term in Erie county, no account having been taken, the case was again reserved for more specific directions.
The defendants rely upon the following propositions:
1. That if the plaintiff is entitled to relief, he could not, by his own consent, even for just cause, work a dissolution of the partnership until after a decree of the court.
2. That all profits of constructing the work, which was the sub *313 ject of the partnership, should be divided between the partners, agreeably to the terms of the articles of copartnership.
The first of these propositions was fully considered on the former hearing; but as it was then disposed of without giving an opinion to the reporter, the case is not to bo found in tjie volume of reported cases. To determine its merits it became necessary to look into the papers of the whole case, and cover almost the entire ground embraced by the former investigation. This labor has been performed; and although it would be perhaps more satisfactory to the parties concerned, were wo to take the pains to embrace in our opinion all the questions of facts and law arising in the controversy, minutely and in detail, with an opinion upon each in its turn ; yet it would be of little value to any one else, and would require much labor that may well be dispensed with. So far as may be necessary to give a full view of the principles of law that have governed heretofore, and at this time, the decision made, I shall endeavor to speak of the facts as in our judgment they exist.
On December 29, 1839, the complainant, having a contract with the board of public works for the construction of sections 49, 53, 56, and 57, upon the Wabash and Erie canal, and the work requiring more means than he could readily command, in order to obtain assistance, he entered into articles of agreement with the respondents, the substance of which is as follows:
The said Barber and Barney were to be mutually interested *in the contract for the construction of said sections with said Durbin, and each of the parties to share alike in the profit or loss; and it was understood by the parties that they were to share and share alike (the said Barber and Barney, of the one part, and the said Durbin of the other part, each one-half) of all the profit and loss, from the beginning to the completion of said work.
In consideration that said Durbin would bestow his time and attention in superintending the construction of said work, and in consideration also that said Durbin had taken said Barber and Barney into partnership, and given them a joint and equal interest with him in constructing said work, all which ho had agreed and did thereby agree to .do, the said Barber and Barney covenanted and agreed to and with the said Durbin, that, for the purnose of constructing said sections of said canal, they would from *314 time to time, as might be required for obtaining materials, employing hands and carrying on said work, make such advances in money, goods, produce, etc., as might be wanted for that purpose, over and above the estimates that might be at any-time received. Provided, always, and it was thereby agreed and understood between the parties, that they should not bo required and compelled to advance, at any one time, over the sum of $3,000 ; and that said goods, produce, etc., should bo furnished at original cost prices, or such as should be mutually agreed upon by the parties! thereto.
It was understood and agreed that, whenever any estimates should be received from the state, for the construction of said work, or any part thereof, they should be received by both parties thereto, or their order, and that one party should not receive the same without the consent of the other, and the said estimates, when so received, should first be applied toward the payments of advances made as aforesaid, by said Barber and Barney, and the other debts and costs and charges in constructing said work, and the balance, if any, should be equally divided between the parties thereto.
*Under this agreement, the parties commenced work in January, 1839, and the work was successfully prosecuted till May, when the state paid an estimate of $9,000. At this time the company owed debts of over $9,000, besides the advance by respondents of $2,743; of this estimate Barber and Barney applied to their own uses, or retained, $3,550. The work still progressed till July 27, when respondents were .in advance about $2,100, and the debts of the company wore, including this advance, about $7,300. On the 17th of the month, Durbin was in great want of money, and wrote to defendants that he had expended his last cent, and was in need of help. They started for the work, and one of them, on the way, succeeded in getting from the agent of the state an advance of $6,300, and went on to the job; but said nothing to Durbin about it, and he knew nothing of it until he learned it from the agent of the state about two months subsequent, when calling for another estimate. In the meantime the respondents had used the money in private speculations of their own. Durbin, in the interval, had been laboring under serious difficulties for want of funds; his hands were leaving him, claims were pressing upon him, and he had to resort to every means 'n his *315 powcy to sustain their credit and keep his workmen and the state engineers quiet. Finally, after repeated calls upon them, and after learning the extent of their violations of the contract, and the job being in debt some $5,000, and respondents in arrears instead of being in advance; he notified them of his intention to abandon, on his part, the contract between them; filed this bill on the 20th of November, upon which was allowed an injunction, restraining them from further interfering with the work, and from receiving further estimates. These are the general features of the case, and upon these we hold that the copartnership ought to be considered as dissolved, and put an end to, from the 16th of November, the day notice was given.
It is now said by learned counsel, that this dissolution should date from the decree only.
*The point was fully argued on the former hearing, and much debated between the members of this court. It was then supposed to be within the power of the court to say at what date the contract of copartnership should, in equity and good conscience, be considered as at an end. We believe still in the correctness of that doctrine. It is within the power of the court to say at what time a partnership contract shall be rescinded and ended as between the parties ; for there is nothing in the nature of a partnership contract to restrain the court from trying a question of violation by the same rules applicable to any other agreement. Wo may admit that the partnership was not dissoluble at the mere will of either party ; and that the period of its termination, by the terms of the article, was at the completion of the job of work; and yet that weakens not the position taken, nor does it touch the grounds upon which it is based. The great principle upon which the decision stands is equality — a principle in which equity “peculiarly delighteth.” Barber and Barney had refused to be bound by the contract — they disregarded its letter, and violated its spirit. Not only neglecting to observe the agreement to advance funds, the only object of Durbin in giving them any interest in it, they secretly withdrew the proper funds of the company for private purposes of their own. Under circumstances like these, it would be unequal, as it would be unfair, to hold Durbin bound by his part of the agreement. They had violated it, and their acts gave him a right to abandon it. This right he pursued in a proper manner by giving prompt notice, and asking the court to do lor *316 him what, without their aid, he could only do at the hazard of losing all the anticipated profits of the undertaking. He was not willing to end the business by throwing up the contract to the state, nor to surrender it to partners who had kept no faith with him, nor was he bound to do it. The respondents had done that which justified him in appealing to a court of equity to rescind the contract as of' that day, to restore to him his own, and to give back to him, as far as the ^altered circumstances would permit, what ho had parted with for a consideration which had more than failed. The case cited from 5 Ves. 228, is easily distinguishable lrom this. It was like the case of a surviving partner continuing the business of the firm on the former capital of the firm, when the joint property having been made the foundation of the profits, the interest in the profits followed the interest in that which produced it; and such would bo the rule here, had not measures been taken to put an end to the joint business. But that precludes the idea that the complainant intended to proceed in the business as a joint concern. This act forbids any such implication. And the defendants’ conduct equally forbid the court’s making any such inference in their favor.
This brings us to the second point. What has already been said has much bearing upon the question as to the manner in which the account should be taken. There is, perhaps, no general rule without exceptions, certainly none that will do exact justice in every case, or that may not do injustice in particular cases. There is one general maxim, however, that is seldom found to fail, to wit, that when a supposed general rule is so applied as to work manifest injustice, it is most likely that it is either misunderstood or misapplied.
The difficulties which have embarrassed counsel in this branch of the case arise from the fact, that after Durbin had taken measures to free himself from the connection with, and interference of, the respondents, he went on and completed his contract with the state, and, it is supposed, made some profit by it. Assuming that this was “ a trading with joint capital,” the respondents claim half the profits, upon the common principle, that the employment of the common capital, having produced an increase, the owner of' the one is entitled to the other, subject to all just deduction. No fault can be found with this rule, when applied to a proper case; and yet, were we to apply it here, treating Dur *317, 318 bin’s contract with the state as a part of Barber and Barney’s capital or joint stock, in the way which they claim to be right, it would certainly *take from Durbin half, if not all, the profits he has made, and to which he would have been entitled, had they observed with him the ordinary good faith required of partners. Durbin, be it remembered, lot them into the benefits of the contract, in order to get the continued use of $3,000, to enable him to carry on and complete the job. The capital stock, on his part, was his labor; on theirs, the advance which they agreed to make. When they failed and withdrew all of their capital, and some of the proceeds of the work, and he took the measures rendered necessary for self-protection, he was left with his contract with the state on his hands, to be performed as best he could, or to be forfeited, and himself subjected to any loss the state might sustain in consequence of his non-performance. To avoid the forfeiture, he had to look for other capital than that of the respondents, and to offer to other capitalists inducements-suffioient to procure those advances which they had failed to make. It seems to us, that equity, under these circumstances, requires that, in applying the general rule to this case, the contract with the state, and Durbin’s labor should, together, be taken as the portion of joint capital brought into the firm by him, and that in taking the account, the master should so regard it, treating the partnership agreement as rescinded from and after November 16, 1840, and each party entitled to a return of his own capital with a use of it, and entitled to all the increase since that day.
That, as to the joint operations before that day, they share alike in profits and loss, except that complainant shall be entitled to a decree for such damages as he may have sustained from the violation of the articles of agreement by the respondents. .
Lot the decree be drawn, directing the master to state an account: 1. Of all the work done on November 16, 1840, and its amount at contract price. 2. The amount and value of all the property and credit of the partners to the same time. 3. The amount of the debts then due. 4. The payments made on account of said debts, and by whom. 5. *The amount of damages sustained by complainant, by reason of the violation of the articles of copartnership by the respondents. 6. What amount of capital, after the payment of all partnership debts, if any was used by the complainant in. the work after the dissolution of part *319 nership; and what amount of capital the complainant used in the said work, which was advanced to him by Benjamin P. Hollister, treating said contract with the state as part of complainant’s capital, the cash value of which the master shall ascertain. 7. The profits on respondent’s capital employed in the work, which shall be ascertained by giving to it the same amount of entire profits made after the dissolution, which said capital bears to the whole amount of capital employed, and which is to be ascertained as specified in the sixth direction.
Hitchcock, J., having been of counsel, did not sit in the case.