West, J.
This case comes before the court on an information in the nature of quo warranto, filed by the attorney general against the defendant, for alledged usurpation of the mayoralty of the village of Bucyrus, in Crawford county.
To the information the defendant interposes for plea, that he was, on the first Monday of April, a. d. 1870, at thf municipal election held within and for the village, dulj elected mayor thereof for the term of two year’s next ensuing ; in pursuance of which election he regularly qualified and entered upon the duties of that office, and therefore he does not usurp the same.
The relator traverses, and avers that at said election Wil Ham M. Reed was duly elected to the office of mayor fo the term thereof, and duly qualified, in pursuance of law, as such officer.
Judgment of ouster is asked against the defendant, but the action of the court is not invoked in respect to the succession.
The facts of the case are in substance as follows :
At the Bucyrus municipal election of April, 1870, William M. Reed and George Donnewirth, were the opposing and only candidates for mayor voted for thereat. Printed tickets, containing, respectively, the names of competing candidates for this and other offices, were used. From a number of the ballots cast the name of Reed was erased and that of Donnewirth substituted, and vice versa. Some of these altered tickets were imperfect in respect to orthography or Christian name.
George McNeal, the then mayor, and Charles Hetich and H. W. McDonald, councilmen, were the judges, and Joseph Meer, councilman, clerk of the said election; Wm. Stimmel, corporation clerk, being a candidate for re-election, not sitting.
At the close of the poll the ballots were canvassed, and the tally-sheet footed, but not signed. Some demonstration then occurred, menacing the ballots and tally-sheet with destruction, when H. W. McDonald placed them in the box, *218 which, was given into the mayor’s custody, and the board adjourned until the next morning. Tho box was taken to the mayor’s office, where, in the morning of the 5th of April, the election board reassembled, signed the tally-sheet, declared the result of the election, delivered the key of the box to Wm. Stimmel, corporation clerk, directing him to notify the successful candidates of their due election, and then regularly dissolved.
Stimmel caused Reed to be notified of his election. He accordingly executed his official bond, and took the oath of office, and on the 11th of April appeared at the regular meeting of the council to enter upon the office of mayor, where he found the defendant already installed, under the following circumstances :
After the election board had regularly dissolved the ballot-box remained in an exposed place, of easy access, in an office occupied in common by Mayor McNeal and Mr. Caldwell, a justice of the peace, until the morning of the 8th, when the ballots then in it were subjected to a private canvass by Wm. Stimmel and S. 1103d, who testify that they were all strung upon a thread, and that upon being counted, as well those which were correct in name and orthography as those which were not, Donnewirth was found to have a majority ; but how many ballots were in the box, or how man3'- were counted for each candidate, or how many were imperfect or blank, they fail to recollect.
On Saturday, the 9th, five days after the election board had dissolved, Stimmel, the corporation clerk, and Charles Hetich, H. W. McDonald and John A. Schraber, members of council, in the presence of the defendant, made a recount of the ballots then in the box, and a second tally-sheet, attested by Stimmel as clerk, and the councilmen as judges, which, in form, appears to have been regularly made as and for an original tally-sheet, certifying that Donnewirth was duly elected mayor ; to whom Stimmel accordingly issued a certificate. But none of the members of this self-constituted board can recollect the number of the tickets then in the box, or the number counted for either candidate, or the *219 number of imperfect ballots by them rejected, or the number of blank ballots.
The defendant testifies that the number counted for him was 298, and those rejected, because his name was incorrectly written thereon, were 2 ; that the number counted for Reed was 287, and those rejected, because his name was incorrectly written thereon, were 9. But he fails to recollect the whole number of the tickets and blank ballots. The second tally-sheet gives the defendant 298, and to Reed 287.
Assuming the testimony of Donnewirth to be correct, a comparison of the two counts shows the following :

First count :

Whole number of ballots cast at said election, 626
Counted for Reed,.....311
Counted for Donnewirth, .... 298
Imperfect and blank, .... 17
Majority for Reed, . . . . .13

Second count:

Counted for Donnewirth, . . . 298
Counted for Reed, ..... 287
Imperfect and blank, .... 41
Majority for Donnewirth, . . . . 11'
Thus, it appears, that at the first canvass twenty-four more votes were counted for Reed, either by fraud or mistake, than at the second. But it is shown in the evidence that all the officers of the election, except one, were the political friends of Donnewirth, and all of them, in their testimony, completely and unqualifiedly negative the possibility of frauds in the original tally, and express entire ignorance of any mistake, and of how it might or could .have occurred.
The foregoing is the substance of the facts digested from the volume of testimony submitted in the case. Do they show in the defendant any warrant to exercise the office he is alleged to have usurped ? We think not.
The original tally-sheet of the Bucyrus municipal election in a. d, 1870, was prima facie evidence of the election of *220 William M. Reed to said office for two years then next ensuing'. Howard v. Shields, 16 Ohio St. 184. The spurious tally-sheet of the second canvass cannot be received to impeach it, even if it had been made by the members of the legal board of canvassers, because, having been regularly dissolved, they became fundi officio, and incompetent thereafter to make an authoritative re-canvass. Ingerson v. Berry, 14 Ohio St. 315. Much less can a self-constituted tribunal, composed though it may be of officers of the municipality, make a re-canvass and tally-sheet paramount in point of dignity aud authority to that of the regular board.
But the facts and circumstances developed in the history of this case will not permit the impeachment of the original tally-sheet by any evidence, however competent, of accuracy in the second count, unless it be made affirmatively and satisfactorily to appear that all the ballots were present in their original condition. This will not be presumed after the regular board of canvassers has performed their duties and dissolved, and the ballots remained for a considerable period in an exposed place of easy access.
A comparison of the two tallies shows that Donnewirth received at each count exactly the same number of votes, while the second gives to Reed twenty four votes less than the first, and leaves only eleven rejected ballots uncounted for either candidate. If it be assumed that all the ballots were in the box at the second canvass, it is apparent that all the eleven rejected ballots, together with at least thirteen blanJcs, must have been counted to Reed in the first tally in order to make the twenty-four additional votes by it placed to his credit. This could not have occurred by mistake without immediate detection, for the election was warmly contested and the canvass closely scrutinized. It is therefore incredible that so gross an error should have occurred in favor of a candidate by an election board the members of which, except one, desired the success of his competitor, no error being shown to have occurred in the tally of the rival.
*221 The alternative solution, on the assumed hypothesis, is. that the discrepancy could have resulted only from conspiracy and deliberate fraud, which is still more incredible than the presumption of mistake, especially as all the members of the regular board in their testimony unqualifiedly negative the suspicion of fraud.
We prefer to believe, and the conclusion is irresistible, that intermediate tampering had erased Reed’s name from a number of ballots commensurate with the discrepancy.
Judgment of ouster, therefore, must be entered against the defendant.
Welch, C. J., and White, Day and McIlvaine, JJ., concurred.