## QUESTIONS UNDER THE BEAL LAW.

[Circuit Court of Wood County.]

FRANK FIKE v. THE STATE OF OHIO.

Decided November 28, 1903.

*Beal Election Law—Irregularity in Publication of Mayor's Proclamation—Validity of Election can not be Impeached Collaterally in a Criminal Prosecution—Change of Venue—Final Jurisdiction—Mayor's Judgment for a Misdemeanor can not be Reviewed—On Weight of Evidence.*

1. Election laws are to be construed liberally so as to preserve, if possible, and not defeat the choice of the people as expressed at an election.

2. Failure to publish for a full period of ten days the mayor's proclamation of a special election to be held under Sections 4364-20a, Revised Statutes, *et seq.* (commonly called the Beal Local Option Election Law), is not fatal to the validity of the election, where the election was otherwise regularly held, knowledge of its approach was general throughout the municipality, and a comparatively full vote was cast, and no attempt was made to deceive or mislead anyone, and it does not appear that any elector was either without knowledge thereof, kept from voting, or failed to vote on account of the failure to give ten days notice Publication of notice for ten days, under such circumstances, is not jurisdictional, and failure to publish it for the full period is a mere irregularity which does not invalidate the election.

3. The validity of a special local option election held under Sections 4364-20a, Revised Statutes, *et seq.*, which resulted in the prohibition of the sale of intoxicating liquor within a municipality, can not be collaterally impeached by a defendant in a criminal prosecution for selling intoxicating liquor in violation thereof, notwithstanding he may have moved into the municipality after the election. The election provided by Section 4364-20i, is exclusive, and the general rule that a defendant in a criminal action may raise the constitutionality of the law under which he is prosecuted has no application to such cases.

4. Mayor's courts are without authority to grant a change of venue in misdemeanor prosecutions; final jurisdiction thereof is given such courts under Section 1817, Revised Statutes; Section 6529, Revised Statutes, providing for a change of venue before justices of the peace when the justice is a material witness in the case or is prejudiced is not applicable to mayors' courts.

5. The judgment of a mayor's court in misdemeanor prosecutions can not be reviewed upon the weight of the evidence. Section 6565, Revised Statutes, relating to bills of exceptions before mayors .and justices of the peace only provides for a review on questions of law, not of fact; and Section 1752, Revised Statutes, only authorizes such review when the judgment is one of conviction for violating a municipal ordinance.

HULL, J. (orally) ; PARKER, J., and HAYNES, J., concur.

Error to the Court of Common Pleas, Wood County.

There are six of these cases, involving the same questions and the opinion of the court will be delivered in the case of Frank Fike.

These cases are in this court on petition in error to the judgment of the court of common pleas, that court affirming the judgment of the mayor's court of the village of Freeport in this county. This court is asked to reverse the judgments of both courts below. The plaintiffs in error were prosecuted and convicted before the mayor of the village of Freeport for the violation of certain provisions of the liquor law of this state known as the Beal Law, which provides for the regulation of the liquor traffic.

An election was held under the local option feature of this law in the village of Freeport on the 18th day of July, 1902, and at that election a majority of the electors who voted, voted in favor of prohibiting the sale of liquor; sixty-eight votes against such prohibition and a hundred and twenty-seven in favor; or, to put it in the language of the statute sixty-eight votes for the sale and a hundred and twenty-seven votes against the sale, making a hundred and ninety-five votes in all cast. Under the provisions of this law, after a petition has been duly filed as provided in the statute, an election is to be held after due proclamation has been made, and in case a majority of the electors vote against the sale, such sale from that time becomes unlawful within the limits of the municipal corporation. These plaintiffs in error, defendants below, were convicted and fined for an alleged violation of this law.

The chief contention, although there are other claims made upon this proceeding in error, is that the election was not a legal

election, and that therefore the voters of this municipality have never lawfully chosen by ballot to prohibit the sale of intoxicating liquors within its limits. The ground of complaint is that the proclamation for the election signed by the mayor was not published for the period of ten days as required by the provisions of this law, Section 4364-24 providing that proclamation shall be made the same as for election of councilmen, which requires ten days publication of notice.

The proclamation in this case of the mayor giving notice of the election was dated by him as of the 8th of July, 1902, and called for an election upon the 18th of July to be published in the weekly paper, *The Prairie Depot Observer,* but it was not published until the issue of the paper of that week, which was the 11th day of July, 1902, notifying the electors that the election would be held on the 18th of July, thereby giving them only seven days' notice, if we exclude one day; eight days at the most—while the law requires ten days' notice.

It is claimed that this was fatal to the election; that this statute provides how the sale of introxicating liquors may be prohibited by the people of a municipal corporation; that it is in a way permitting the people to make a law for themselves by vote, and it is claimed that before any valid election can be held, the requirements of the law must be complied with, and the notice must be given as required by the statute, and if not, that all proceedings are null and void, and cases are cited which it is claimed tend to sustain this proposition.

On the other hand, it is claimed by the State, the defendant in error, that if the evidence shows that there was no fraud, no intent to' prevent the electors from having full notice of this election, and if the election was regularly held, and if the evidence shows there was a full and fair vote and general knowledge of the coming election in the community, that this failure on the part of the mayor to give notice the full time required by the statute would not invalidate the election. The record in this case shows that the petition was filed as required by law—the law requiring the signatures of forty per cent. of the electors— and that the election was held at the proper time after the petition was filed; and it shows that there was knowledge of the

coming election among the people in the community; that it
was discussed upon the streets; that public meetings were held
to consider and discuss the matter at which speeches were made,
and there was work done pro and con, as the record shows by
the voters of the municipality—some working for it as the elec-
tion approached, and some working against it.   There is no
evidence that any person, whether elector or not, man,
woman or child in this village failed to learn, or did not
have notice of this election.   There is no evidence that any voter
was kept from voting, or failed to vote at this election on
account of the lack of two or three days notice of the time re-
quired by law.

The election occurred in July and there were 195 votes cast.
At the municipal election of the preceding spring there were
175 votes cast; at the presidential election held in 1900 there
were more votes cast, but the reason for that was that the
entire township vote was cast then.   There were more votes cast
at this election under the Beal Law than were cast at the pre-
ceding municipal election.

We are of the opinion that under this state of facts, the
failure to give, in the respect I have mentioned, the notice,
or rather publish the proclamation of the mayor, was not fatal;
that that in itself was not sufficient to have this election de-
clared invalid.

This question, and others of similar character have been before
the courts of this country a great many times, and cases may be
found, possibly, that would go so far as to hold this election
invalid, but the great weight of authority is against it.   The
general doctrine is that mere irregularities, that do not go to
the foundation of the election, will not invalidate the election,
although the provisions of the statute have been technically vio-
lated, if it appears that there has been a fair election and a
comparatively full vote, and no fraud or attempt to deceive or
mislead.   I should add further in connection with the facts in
this case, that the election was held under the auspices and
direction of the regular County Election Board, and that the
regularly appointed judges and clerks had charge of the elec-

tion, with perhaps one exception; one officer was sworn in that day to take the place of an absentee.

The general rule, as gathered from all the authorities, is stated in The Am. & E. Ency. of Law, Vol. 10, page 626 (2d. Ed.), where the author says:

"In the case of a special election, however, when the law does not fix the time and place for holding the same, but they are to be fixed by some authority, failure to give notice or issue a proclamation of the election (that is, failure to give any notice) will render it a nullity, unless the people have actual knowledge and attend, so that the result is not affected. If it appears that the people generally had actual knowledge of a special election, so that the result would not have been different if proper notice had been given, failure to give such notice does not vitiate the election."

The case of *Dishon* v. *Smith* in 10th Iowa, page 212, is in point; this is found in the syllabus:

"Notices of Election: The provisions of Chapter 46, laws of 1855, 'An act in relation to county seats,' prescribing the time and manner of giving notices of the presentation of a petition for holding an election on the removal of the county seat, are directory merely, and the absence of such notice will not invalidate an election of which the people were duly notified. An election will not be invalidated by the omission of some duty by an officer charged with giving notice thereof, when such election has been duly ordered and held."

I will read from page 218 of the opinion:

"In matters of such a public nature, the observance of each particular is not held a prerequisite to validity. And it is a general rule of law that statutes directing the mode of proceedings of public officers, relating to time and manner, are directory."

And further on:

"But there is a peculiar fitness in the rule when applied to popular elections, in which case we may consider the character of the duties and of the men necessarily chosen to perform them. They are usually men not instructed in their duties nor in nice forms and distinctions. Many of the duties, too, are to be performed in haste and amidst confusion and without opportunity for deliberation."

And further along:

"And it has been remarked, further, that the people are not to be disfranchised, to be deprived of their voice, by the omission of some duty by an officer, if an election has in fact been held at the proper time; and that such penalty ought not to be visited upon them for the negligence or willfulness of one charged with similar duties. Upon considerations like these the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have in truth been called upon and have spoken. In the present case whether there were notices or not, there was an election and the people of the county voted, and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise."

So in the cases under consideration, it is not claimed by the plaintiffs in error that there was not full notice and knowledge of this election that was to be held, and it is not claimed that any voter was kept from voting, and as is said in another part of this opinion, in the same case this matter of notice is not jurisdictional in the case of an election, as it is in the case of beginning a suit in court. The court says:

"And it is further averred that there was no such notice in fact. It is an error to regard this as a jurisdictional matter. This idea pertains in cases where the courts acts judicially and in matters between party and party, and not to one of the nature of the present one, which is a vote of the people. Nor does the want of such notice invalidate the election."

In a case in California, the election place was changed a short distance from the regularly appointed place, and the Supreme Court of California held that that would not vitiate the election.

In the 15th O. S., 532, a case is reported where an election was held invalid because there had been no notice of the election and no proclamation that such an officer was to be elected. This was an election to fill a vacancy in the office of probate judge; the court in the syllabus says:

"Where a vacancy is about to occur in the office of probate judge, by reason of the expiration of the term of an incumbent of that office, and the sheriff, in pursuance of the statute, in due

time, prior to the day for the regular election, publishes his proclamation, giving notice of such election, and enumerating therein all the state and county offices to be filled at such election, except the office of probate judge, in respect to which the proclamation is silent; and, by reason of such misfeasance of the sheriff, the great body of the electors of the county are misled, and have no notice, either official or in fact, of an election to fill the office of probate judge; but, nevertheless, a small number of the electors of the county, less than one fourth of the whole number of voters at that election, cast their votes for a single candidate, and no votes are cast for any other, such attempted election is irregular and invalid.''

But no such state of facts exist in this case, where, as I have said, there was a larger vote than at the preceding municipal election and there was a general knowledge of the election. Judge Brinkerhoff speaking for the court says, p. 537:

''In deciding this case, however, we do not intend to go beyond the case before us, as presented by its own peculiar facts. We do not intend to hold, nor are we of the opinion, that the notice by proclamation, as prescribed by law, is *per se*, and in all supposable cases, necessary to the validity of an election. * * * We have no doubt, that where an election is held in other respects as prescribed by law, and *notice in fact* of the election is brought home to the great body of the electors, though derived through means other than the proclamation which the law prescribes, such election would be valid. But where, as in this case, there was no notice, either by official proclamation, or in fact, and it is obvious that the great body of the electors were misled, for want of the official proclamation, its absence becomes such an irregularity as to prevent an actual choice by the electors, prevents an actual election, in the primary sense of the word, and renders invalid any semblance of an election, which may have beeen attempted by a few, and which must operate, if it be allowed to operate at all, as a surprise and fraud upon the rights of the many.''

As stated by the court in this case, where there is no general knowledge of an election, or such a lack of knowledge that only one man was a candidate for the office—a case like that is not in fact an election—it is merely a few electors getting together and appointing a man to the office. That was not the case here. The general doctrine of the cases, and the authorities is, that election laws are to be construed liberally, so as to preserve, if

possible, the choice of the people as expressed at an election, and not to defeat it as is said in substance, by Judge Cooley in his work on Constitutional Limitations, page 778.

In the case of *Harpster* v. *Brower*, 5th C. C. Rep., 395, a question similar to the one under consideration here was raised. This was a special election upon the question as to whether a town hall should be erected in the township, and the statute under which the election was to be held required notice to be given thirty days, and the notice that was given lacked six days of the time, and it was claimed that the election was invalid. The second paragraph of the syllabus is as follows:

"An election will not be declared void because the notice required by statute was not given for the full length of time specified, when it appears that the great body of electors had actual notice of and participated in the election."

Judge Moore says in the opinion, that in view of the facts in the case it was not an absolute necessity that they should pass upon the question, but they did give their views upon it as stated in this paragraph of the syllabus which I have read.

A recent case in Washington is in point (58th Am. Dec., page 38, the case of *State* v. *Doherity*); the Supreme Court of that state say: "Formalities in giving notice prescribed by statute are regarded as directory merely, unless there is a declaration that a failure to observe a particular formality shall render the election void. An election will, therefore, not be declared invalid for the omission of some formality in the notice, if it appears that the time and place of holding the election and the questions to be submitted had become matters of general notoriety, and that the great body of electors participated in the election."

The provision in the Beal Law requiring notice is found in Section 4364-24:

"And notice shall be given and the election conducted in all respects as provided by law" for the election of members of the council of the corporation, so far as said law may be applicable.

But there is no provision that unless this requirement as to notice is complied with strictly, the election shall be void. We

hold, that, notwithstanding this irregularity in the matter of notice, the election was valid and binding upon all the people of the municipality of Freeport.

It is urged further by counsel for the State that this question can not be raised in this proceeding; that upon a plea of not guilty under a prosecution for a violation of the law, the defendant can not be heard upon the question of the validity of the election for the reason that the statute itself provides a method for contesting the validity of the election, and it is urged that that method must be followed.

This provision is found in Section 4364-20*i*, which provides:

"Any person being a qualified elector of any municipal corporation wherein an election shall have been held as provided for in this act, may contest the validity of such election by filing a petition duly verified with probate court of the county in which such municipal corporation is situated, within ten days after the election, setting forth the grounds for contest."

And then follows the procedure: The jury shall be summoned, etc., and the method of procedure of the contest before the probate judge. It is urged by the plaintiff in error that a defendant in a criminal case has the right to raise the question of the validity of the law at any time. This is undoubtedly true generally, but the question here is rather whether he can question the validity of an election of an official before whom he is being tried, or the validity of an election held under such a statute as this, or whether such question must not be determined in an election contest as provided by law, and we are of the opinion that this question can not be raised as has been sought to raise it here; that the validity of this election can not be attacked collaterally. The constitutionality of an act may be raised in this way, but the general rule is, and so far as we can discover, the universal rule that an election contest can not be injected into a criminal prosecution by attacking the validity of such an election as this, and we think that has been settled by the Supreme Court of this state, by a case that went from this county. It is the case of *Peck* v. *Weddell* in 17th Ohio State, page 271. This was a county seat contest; a contest between Bowling Green and Perrysburg where an election had

been held, and it was claimed that various frauds had been committed for the purpose of showing, or attempting to show that a majority of the people of the county desired to have Perrysburg for the county seat. The court say in the second paragraph of the syllabus:

"That allegations of fraud and illegality in conducting the election, constitute no sufficient ground for such injunction. Wrongs of such a nature can be inquired into and redressed, only by means of a contest of the election, pursuant to the provisions of the act of April 18th, 1857."

Here was a claim of fraud and illegality in conducting an election. The claim in the case before us is that there was a fatal defect in the matter of notice. The court in the case cited held that such a question must be determined in a contest, and on page 284, Judge Scott, delivering the opinion of the court, says:

"It is evident that this mode of inquiring into alleged frauds in elections, and of ascertaining the will of the majority of the electors as expressed by the legal ballots, would be very illy adapted to accomplish the end proposed, and would be as likely to faciliate the perpetration, as the correction, of frauds against the public. But the remedy by contest under the statute is speedy, appropriate and adequate; it affords an opportunity of being fully heard, to everyone interested; and the decision of such contest is by a judgment which binds all the world. The specific remedy having been given by statute, and being the sole remedy adapted to the ends of speedy justice, there is no reason why a court of equity should intervene, by injunction, until the facts alleged in the petition have been found, upon such contest. It was held by this court in *State* v. *Berry* (14 Ohio St., 315), that a contest is the specific and sole remedy provided by statute for the correction of all frauds, errors, and mistakes which may occur in the process of ascertaining and declaring the public will, as expressed through the ballot-boxes."

As stated by Judge Scott, the question was first decided in the case in the 14th Ohio State, to which reference is made. The Constitution itself requires the Legislature to make provision for the contest of all elections. Article II, Section 21, is in this language: "The General Assembly shall determine by

law, before what authority, and in what manner, the trial of contested elections shall be conducted;'' and the General Assembly in this case determined and declared, in the statute which I have read, how the election contest, growing out of such an election as this and before what authority, should be determined.

The case in the 15th O. St., page 114, is to the same effect, the syllabus reading:

''A specific mode of contesting elections in this state, having been provided by statute, according to the requirements of the Constitution, that mode alone can be resorted to, in exclusion of the common law mode of inquiry by proceeding in *quo warranto*. The statute which gives this special remedy, and prescribes the mode of its exercise, binds the state as well as individuals.''

The question in this case was whether the State would be bound the same as an individual might be by such contest, and the Supreme Court held that the State would be bound as well as the electors of the community. They say on page 135 of the opinion:

''We think that it was clearly intended that the State should be bound. In our system of popular government, as between candidates who are legally eligible, an absolute right of choice belongs to the electors, to be exercised according to their sole discretion, and when their votes have been canvassed, and the result publicly declared, if all the electors of the proper district, whose will is entitled to absolute control, are satisfied with the fact thus declared, we perceive no good reason for allowing that fact to be questioned in any other quarter.''

In the case at bar the election having been held, the result having been declared, and the people having expressed their choice, the law has become fixed and whoever comes into the municipality thereafter is bound by it. It is urged in this case that if there was a defect in the notice of the election it ought not to be held valid against one who moved into the municipality afterwards and had no opportunity to contest. We think this objection is not well taken. He must submit to the will of the people expressed before he came into the community. The 26th O. S., p. 216, is also in point, especially on page 221,

and an earlier case in the 8th Ohio, p. 375, is to the same effect.

In the case of *State* v. *Cooper*, 101 N. Car., 684, found in 8 S. E. Rep., 134, the Supreme Court of North Carolina say:

"The ascertainment and declaration of the result of the election was *prima facie* correct, and it was conclusive until, in a proper action brought for the purpose, the true result otherwise should be ascertained by a judicial determination. The law contemplates and intends, generally, that the result of an election, as determined by the proper election officers, shall stand and be effective until it shall be regularly contested and reversed, or adjudged to be void by a tribunal having jurisdiction for the purpose.  *  *  *  The law does not provide for such continual and repeated contests in every case that may arise. It intends that one contest, properly instituted for the purpose, shall establish the validity or invalidity of the election questioned."

We hold that a defendant being prosecuted under this statute, can not defend upon the ground that is urged in this case; that can only be taken advantage of by a contest of the election according to the provisions of this statute.

There are two other objections made which I will refer to briefly. The cases were tried without a jury. A change of venue was asked before the mayor on the ground that he was biased and was a material witness. We find no provision in the statute permitting a change of venue on this ground in a prosecution before the mayor. Section 1744 provides that the mayor within the limits of the corporation shall have all the jurisdiction and powers of a justice of the peace, etc. Section 6529 provides for a change of venue before a justice of the peace. Section 1817 provides for the final jurisdiction of the mayor in cases of misdemeanor:

"He shall have final jurisdiction to hear and determine any prosecution for a misdemeanor, unless the accused is by the Constitution entitled to a trial by jury; and his jurisdiction in such cases shall be co-extensive with the county."

There is no provision in the statute for a change of venue from the mayor's court in a case of this kind where a man is being tried for a misdemeanor.

It is urged further that the conviction of the defendant and the judgment of the mayor was against the weight of the evidence. Without discussing the question at any great length I will say that we hold that under the statutes in this state, a judgment of the mayor in cases of prosecution for a misdemeanor can not be reviewed upon the weight of the evidence. There is no provision in the statute for such review. Section 6565 relates to bills of exceptions before a justice of the peace, mayor and police judge, but that section only provides for a review on questions of law and not on questions of fact; and it has been held in the 26th O. S., 447, and the 34th O. S., 11, that the judgment of a justice of the peace can not be reviewed on the weight of the evidence under this section; also in 7 C. C., 208. Section 1752 is sufficient to permit the review on the weight of the evidence of a judgment of a mayor on a conviction for the violation of an ordinance, but is silent as to misdemeanors. So that we find that there is no provision for the review of a conviction before the mayor of a misdemeanor on the ground that the judgment is against the weight of the evidence; we therefore decline to consider these cases and have not considered them upon that question.

We find no errors in the record and the judgments in all the cases will be affirmed.

*Frank Sala* and *James, Millard & Powell.* for plaintiff in error.

*E. G. McClelland,* Prosecuting Attorney, and *Wayne B. Wheeler,* for defendant in error.