Wanamaker, J.
The relator, James V. Murphy, as an elector and resident of the county of Mahoning and state of Ohio, brings an action in mandamus against the secretary of state, praying for an order of this court directing said secretary of state to certify his name as one of the candidates for judge of the supreme court of Ohio.
The facts upon which he relies, as shown by the pleadings, are in brief as follows: That at the state-wide primary held on the 11th day of August, 1914, the secretary of state, as state supervisor of elections, had printed and distributed primary ballots for use at said primary election; that one of said primary ballots was designated “Republican,” another designated “Democratic,” another designated “Progressive;” that on the Republican ballot there were two or more printed names of candidates, on the Democratic ballot two or more printed names of candidates and that on the Progressive ballot there were no printed names of candidates; that the relator’s name was written on four of the Progressive ballots for judge of the supreme court, which fact was certified to the secretary of state by the deputy state supervisors and inspectors of elections for said Mahoning county, and that the secretary of state refused to certify the relator’s name as being legally nominated for judge of the supreme court of Ohio as a result of the vote had at such August primary election. This is in substance the relator’s claims as set forth in his petition.
The answer, so far as it is relevant to this case, avers the fact to be that the “relator never has been, is not now, and was not at the time of said primary *38 election, a member of said Progressive party, but, on the contrary, was a member of the Republican party” and voted as such Republican on said August 11, 1914.
The relator filed a reply, but in nowise denies the truth of the foregoing facts appearing in the answer. Should the writ issue?
Mandamus is generally defined as “an action or judicial proceeding of a civil nature, extraordinary in the sense that it can be maintained only when there is no other adequate remedy, prerogative in its character to the extent that the issue of both the alternative and peremptory or final command is discretionary, to enforce only clear legal rights,” etc. 26 Cyc., 139, and cases cited.
A writ of mandamus is at common law regarded as “a high prerogative writ.” It is employed to prevent a failure of justice and is only allowed to a party showing a clear legal right to the relief sought. State, ex rel., v. Berry, 14 Ohio St., 315; State, ex rel., v. Smith, 71 Ohio St., 13.
The right to a peremptory writ of mandamus by a relator must be predicated on the clear legal right of the relator and the inherent natural justice of his claims.
Applying these legal and equitable principles to the case at bar, how stands the relator? At this primary there were cast in excess of 440,000 votes, over 8,000 of which were cast for the Progressive ticket. The total vote cast for the relator for judge of the supreme court was four, one-twentieth of one per cent, of the total vote cast for the Progressive ticket. The relator himself was not at the time *39 and never had been a member of the Progressive party. On the contrary, he appeared at the primary on that day and voted a Republican ticket, thereby declaring himself a Republican. Under existing law the primary is necessarily a party primary. Wisely or unwisely, there is no provision made for the independent voter. The members of a party are presumed to act as the members of a lodge, or the members of a church, or of any other voluntary organization, to select representatives of their lodge, church or such association, to fill certain offices and discharge certain trusts.
By an examination of the primary statutes, Sections 4952 (as amended 103 O. L., 476), 4977, 4980, 4981, 4982, 4969, 4970 and 4973, General Code, all combine to demonstrate the soundness of this position. The voters signing the original petition must certify that they are members of the party whose nomination is sought, and some one signer must make oath to that effect. The candidate also makes a declaration that he will abide by the principles enumerated by his political party. But, more than that, the statutes, especially Section 4980, General Code, provide as to who are legally qualified electors at such primary. The language of the statute is as follows:
“At such election only legally qualified electors or such as will be legally qualified electors at the next ensuing general election may vote and all such electors may vote only in the election precinct where they reside, and it shall be the duty of the challengers and of the judges, and the right of any elector, whenever there is reason to doubt the legal *40 ity of any vote that may be offered, to interpose a challenge. The cause of a challenge shall be: That the person challenged has received or been promised some valuable reward or consideration for his vote; that he has not previously affiliated with the party whose ticket he now desires to vote. Affiliation shall be determined by the vote of the elector making application to vote, at the last-general election held in even-numbered years.”
Sections 4981 and 4982 provide as to how the challenge shall be tried and that the judges of the party with whom the voter claims affiliation are the judges to finally determine his qualifications as a legal voter.
Suppose the relator in this case had presented himself to the judges of the primary, represented himself as a Republican and asked for a Progressive ticket to vote the same. Would there be any doubt about the judges’ right and duty to refuse him a ticket ? Under the statutes he would not be a qualified legal voter at such Progressive party primary. If he is not a qualified voter, it is difficult to understand how he could be a qualified candidate. The same spirit runs throughout as to the voter and candidate in connection with the party primary. Indeed, it may well be doubted whether or not at the party primaries the voter may write in any name. He may do so at a general election where the purpose is to get at the wishes of the majority of the voters as to the candidates for office or public policies, but the purpose of the primary is to enable the rank and file of each party to nominate the party’s representatives for public *41 office. It is unnecessary, however, to determine that question here.
The relator cannot as a Republican consistently claim a Progressive nomination. The natural justice of the situation, as well as the clear legal right, is against him, and the secretary of state rightly denied him a place on the ticket.
The writ of mandamus is, therefore, refused.

Writ refused.

Shauck, Johnson, Donahue and Newman, JJ., concur.
Nichols, C. J., and Wilkin, J., not participating.